UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JASON MICHAEL ELLIS, | Case No. 2:20-cv-00323-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| HAMMON (C.O. OSP), et al., | |
| Defendants. | |

AIKEN, District Judge.

Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed this action pursuant to 42 U.S.C. § 1983 and alleged numerous violations of his federal constitutional rights. In a previous Order, the Court dismissed all claims except Claims 1 through 5, 8, 20, and 23, and the parties now move for summary judgment on plaintiff's remaining claims. For the reasons explained below, defendants' motion is granted, plaintiff's motions are denied, and plaintiff's claims are dismissed.

1 -     OPINION AND ORDER

DISCUSSION

Plaintiff's remaining claims allege violations of his Fourth Amendment right to privacy and his First Amendment right against retaliation for engaging in protected conduct. To prevail on their respective motions for summary judgment, the parties must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Cross motions for summary judgment are evaluated separately, with the non-moving party for each motion given "the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

A. Right to Privacy

In Claim 1, plaintiff alleges that Correctional Officer Hannon[1] violated his right to bodily privacy by subjecting him to an unconstitutional search. *See Vazquez v. Cty. of Kern*, 949 F.3d 1153, 1160 (9th Cir. 2020) (stating that the "right to bodily privacy" extends to prison inmates).

Based on the undisputed facts presented by both parties, on May 1, 2019, plaintiff was housed in the Disciplinary Segregation Unit (DSU) and requested a new pair of pants. When an inmate in DSU asks for a change of clothing, the inmate must exchange the article of clothing to be replaced at that time. Boston Decl. ¶ 5. Officer Hannon gave plaintiff a new pair of pants and instructed him to remove the pair of pants he was wearing in order to exchange them. Plaintiff asked to change in the shower area and Officer Hannon denied that request. Plaintiff then removed his pants and changed into the new pair, allegedly in view of approximately thirty other inmates in his housing unit. It is undisputed that plaintiff was wearing underwear when he changed clothing.

---

[1] Although plaintiff named "C.O. Hammon," the officer's last name is Hannon.

2 -    OPINION AND ORDER

Later that day, plaintiff submitted a grievance and complained of a "PREA action" by Officer Hannon, referencing the Prison Rape Elimination Act. *See* Ericksen Decl. Ex. 5 (ECF No. 70 at 51). Capt. Adamson responded and indicated that the incident was "being investigated." *Id.* (ECF No. 70 at 50). Plaintiff was later informed that while the incident was "substantiated," meaning that "it was determined to have occurred," Officer Hannon's conduct did not violate PREA. *Id.* (ECF No. 70 at 48).

Plaintiff argues that the incident with Officer Hannon constituted an unconstitutional "strip" search. Plaintiff contends that Officer Hannon's conduct embarrassed and humiliated him, subjected him to the risk of sexual abuse, and violated societal standards of decency. Pl's Resp. at 16-18 (ECF No. 78). Defendants argue that the undisputed facts do not establish a violation of plaintiff's Fourth Amendment rights. I agree.

Prisoners retain a "limited right to bodily privacy" under the Fourth Amendment in "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (1988). However, the Fourth Amendment is not violated when the observation of an inmate's "naked body is 'only infrequent and casual' or 'at [a] distance,' and is 'reasonably related to prison needs.'" *James v. Lee*, 485 F. Supp. 3d 1241, 1258 (S.D. Cal. 2020) (citing *Michenfelder*, 860 F.2d at 334). Likewise, an unclothed search does not rise to the level of a constitutional deprivation unless it is "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

It is undisputed that plaintiff was not naked and that Officer Hannon did not conduct a search of plaintiff's body, visual or otherwise. Further, the incident was isolated and no evidence suggests that Officer Hannon's instruction to change clothing was intended to be vindictive or

3 -     OPINION AND ORDER

harassing. Accordingly, the undisputed facts do not establish a constitutional violation, and defendants' motion for summary judgment is granted on Claim 1.

B. Retaliation

Plaintiff also alleges several claims of retaliation. To sustain a claim of First Amendment retaliation, plaintiff must establish five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

1. Claims Against Officer Hannon

In Claims 2, 3, and 4, plaintiff alleges that Officer Hannon retaliated against him by interfering with his attempts to grieve the alleged "strip search" that occurred on May 1, 2019. The record does not support these claims. To the contrary, plaintiff signed and submitted a grievance on the same day of the incident and his grievance went through the two-level appeals process. Erickson Decl. ¶¶ 13-18 & Ex. 5 (ECF No. 70 at 46-51). Regardless of whether Officer Hannon declined to provide a grievance form on May 1, 2019, plaintiff presents no evidence suggesting that Officer Hannon interfered with his grievance about the clothing incident or with any other grievance. Accordingly, defendants' motion is granted as to Claims 2, 3 and 4.

In Claim 5, plaintiff alleges that Officer Hannon effectuated plaintiff's transfer from Oregon State Penitentiary (OSP) to Two Rivers Correctional Institution (TRCI) in retaliation for plaintiff's complaints. *Rizzo v. Dawson,* 778 F.2d 527, 531-32 (9th Cir. 1985) (recognizing a First Amendment right to be free from prison transfers made in retaliation for filing grievances). However, defendants present evidence indicating that plaintiff was slated for transfer from OSP as

of April 24, 2019 because of a violent incident in the OSP recreation yard. Cortazar Decl. ¶ 10. Plaintiff does not dispute this evidence. Thus, not only was plaintiff's transfer scheduled before the incident with Officer Hannon on May 1, 2019, plaintiff cannot show that his transfer failed to reasonably advance a legitimate correctional goal.

Accordingly, summary judgment is granted in favor of defendants on Claim 5.

2. Claims against Sgt. Washburn and Cpl. Watson

In Claim 8, plaintiff alleges that Sgt. Washburn and Cpl. Watson issued a false disciplinary report in retaliation for plaintiff's threat of a lawsuit. *See Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (stating that "threats to sue fall within the purview of the constitutionally protected right to file grievances").

On October 21, 2019, Sgt. Washburn instructed plaintiff to "cell in." Pl.'s Response (ECF No. 78 at 93). Later that day, plaintiff left his cell and went to the dayroom to use a messaging tablet. *Id.* (ECF No. 78 at 95-97). Cpl. Watson believed that Sgt. Washburn had placed plaintiff under a Conduct Order forbidding plaintiff from leaving his cell for seventy-two hours. Cortazar Decl. ¶¶ 6, 14. According to Cpl. Watson, he overheard plaintiff say that "he did not care if he was on a Conduct Order" and was going to make a phone call "anyway." *Id.* ¶ 14. After plaintiff used the tablet, Cpl. Watson directed plaintiff to return to his cell and plaintiff complied. *Id.* Cpl. Watson issued a Misconduct Report alleging plaintiff's violation of the Conduct Order.

During his subsequent disciplinary hearing, plaintiff argued that he received no paperwork confirming a formal Conduct Order and believed he could leave his cell. Pl.'s Response (ECF No. 78 at 97-101). The Hearings Officer dismissed the alleged violations, finding that no Conduct Order had been formally entered when plaintiff left his cell and progressive discipline would have been the appropriate response. *See id.* (ECF No. 78 at 104); Cortazar Decl. ¶¶ 15-16.

Although it is questionable whether plaintiff should have received a Misconduct Report, he presents no evidence suggesting that Cpl. Watson issued the Misconduct Report because of his protected First Amendment activity. Plaintiff does not explain when or to whom he voiced an intent to file suit or whether Sgt. Washburn or Cpl. Watson were aware of his threats of litigation. Instead, plaintiff complains that Sgt. Washburn and Cpl. Watson failed to follow correct procedures and issued the Misconduct Report without supporting evidence.[2] Pl.'s Response at 3-4, 6-7. During his disciplinary hearing and subsequent grievance and appeals, plaintiff similarly claimed that he was falsely charged and that the Misconduct Report was unfair, but plaintiff made no allegation that he received disciplinary action because he threatened legal action or engaged in other protected conduct. *Id.* (ECF No. 78 at 73-74, 77, 95-100).[3]

Aside from conclusory allegations, plaintiff presents no evidence of retaliatory animus on the part of Sgt. Washburn or Cpl. Watson. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (holding that a non-moving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (holding that "conclusory

---

[2] To the extent plaintiff argues that Cpl. Watson violated his due process rights by issuing an unsupported Misconduct Report, plaintiff's temporary confinement in DSU was not an "atypical and significant hardship" giving rise to a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that a convicted prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation" that implicates due process protections).

[3] Plaintiff avers that the "Superintendent's Office and Captain Rumsy acknowledged and admitted that Defendants Watson and Washburn did retaliate against the Plaintiff by filing false misconduct charges against the Plaintiff." Pl.'s Response at 7. The record does not support this statement. Rather, after the Hearings Officer dismissed the charges, plaintiff complained that he was sent back to the same housing unit with the same "COs" and requested that he be transferred. *Id.* (ECF No. 78 at 105). Plaintiff was ultimately reassigned to another housing unit, and neither the Superintendent nor Capt. Rumsey acknowledged retaliatory animus by Sgt. Washburn or Cpl. Watson. *Id.*

6 -   OPINION AND ORDER

allegations unsupported by factual data" are insufficient to defeat summary judgment). Accordingly, defendants are entitled to summary judgment on this claim.

### 3. Claim Against Officer March

In Claim 20, plaintiff alleges that Officer March issued a Conduct Order against him in retaliation for his threat to file a lawsuit.

On March 5, 2020, plaintiff requested permission to make a telephone call and Officer March denied the request because the dayroom and recreation yard were closed for security reasons. Pl.'s Response (ECF No. 78 at 139). Plaintiff argued with Officer March and threated to sue him for refusing plaintiff's request to make an "emergency" phone call to the Inspector General's Office. *Id.* Officer March authored a Conduct Report proposing a 72-hour cell-in because plaintiff "attempted to compel staff to allow him phone usage through threat of lawsuit" and "directly challenged" Officer March's authority. *Id.* Officer March noted that staff are allowed twenty-four hours to arrange telephone calls to the Inspector General. *Id.* A supervising sergeant reviewed the Conduct Order, modified the proposed sanction, and ordered plaintiff to write a note of apology. *Id.*; Cortazar Decl. ¶ 7 (stating that a supervising officer must review and either approve, cancel, or modify a Conduct Order within four hours of its issuance).

Plaintiff cannot sustain a retaliation claim based on these facts. Plaintiff does not show that he was subjected to an adverse action that had a chilling effect on his protected conduct, given that plaintiff continued to submit grievances and pursue this lawsuit. *See* Erickson Decl. ¶ 11 & Ex. 4. Granted, a "plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations and quotation marks omitted). Here, plaintiff was required to write an apology note, which does not constitute more than minimal harm.

7 -    OPINION AND ORDER

Accordingly, defendants' motion for summary judgment is granted on Claim 20.

### 4. Claims Against Officers Brush and Olvera

Finally, in Claim 23, plaintiff alleges that Officer Brush and Sgt. Olvera placed him in disciplinary segregation and issued a Misconduct Report because of his complaints and grievances.

On May 23, 2020, Officer Brush was informed by another officer that plaintiff might have violated a Conduct Order requiring him to remain in his cell for seventy-two hours. Cortazar Decl. ¶¶ 6, 23. According to Officer Brush, the other officer gave plaintiff permission to make one five-minute telephone call during this time, and plaintiff made two calls totaling forty-nine minutes and sent a message. *Id*. ¶ 23. Plaintiff alleges that Officer Brush and Sgt. Olvera accused him of being "liar" and "out for lawsuits against officers" and issued a Misconduct Report alleging his violation of the Conduct Order. Pl.'s Response at 31. A Hearings Officer ultimately dismissed the violations because the correctional officer who allegedly gave plaintiff permission to use the telephone failed to submit a memorandum of the incident. Cortazar Decl. ¶¶ 24-27.

Defendants argue that Claim 23 is barred because plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85, 90 (2006).

8 -    OPINION AND ORDER

If the defendant shows that the inmate did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (2014); *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted). This burden is met when the prisoner shows that he or she took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the prisoner's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

Plaintiff admits that he did not file a grievance about Officer Brush's alleged retaliation. However, plaintiff maintains that the grievance process was effectively unavailable to him because inmates may not file grievances to challenge Misconduct Reports. *See* Or. Admin. R. Or. Admin. R. 291-109-0210(4)(g) (providing that an inmate cannot grieve "[m]isconduct reports, investigations leading to or arising from misconduct reports, or disciplinary hearings, findings, and sanctions").

While plaintiff is correct that an inmate may not grieve disciplinary actions, nothing in prison regulations forbid an inmate from grieving alleged retaliation. In fact, on November 16, 2019, prior to the incident with Officer Brush and Sgt. Olvera, plaintiff filed a grievance complaining that Sgt. Washburn threatened plaintiff with discipline in retaliation for plaintiff's threats to sue him for the October 2019 Misconduct Report. Eriksen Decl. Ex. 5 (ECF No. 70 at 42). Plaintiff received a Misconduct Report during the November 2019 incident, and his grievance

9 -    OPINION AND ORDER

was nonetheless accepted and forwarded for a response. *Id.* (ECF No. 70 at 41-42). Thus, plaintiff fails to show that the grievance process was effectively unavailable to him.

Accordingly, plaintiff failed to exhaust the administrative grievance process and defendants' motion for summary judgment is granted on Claim 23.

## CONCLUSION

For the reasons explained above, defendants' Cross-Motion for Summary Judgment (ECF No. 68) is GRANTED and plaintiff's Motion and Cross-Motion for Summary Judgment (ECF Nos. 58, 78) are DENIED. This action is DISMISSED.

Any appeal of this Order or Judgment would be frivolous or not taken in good faith, and plaintiff's IFP status is REVOKED.

IT IS SO ORDERED.

DATED this 17th day of February, 2022.

          /s/Ann Aiken
          Ann Aiken
          United States District Judge